```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION

MCKESSON CORPORATION,

     Plaintiff,

v.                                Case No: 8:20-cv-2202-VMC-JSS

BENZER PHARMACY HOLDING LLC,
RX CARE OF MI LLC, ALPESH
PATEL, and MANISH PATEL,

     Defendants.
_____/
```

**ORDER**

This matter comes before the Court upon consideration of Plaintiff and Counterclaim-Defendant McKesson Corporation's partial Motion to Dismiss Amended Counterclaim (Doc. # 35), filed on January 20, 2021. Defendants and Counterclaim-Plaintiffs Benzer Pharmacy Holding LLC, Rx Care of MI LLC, Alpesh Patel, and Manish Patel (collectively, the "Benzer Parties") responded on February 3, 2021. (Doc. # 36). For the reasons set forth below, the Motion is granted in part and denied in part.

**I.   Background**

The Benzer Parties operate pharmacies throughout the United States. (Doc. # 32 at ¶ 2). In April 2014, the Benzer Parties entered into a supply agreement with McKesson for the

procurement of pharmacy supplies. (Id. at ¶¶ 3, 7).

Beginning in 2019, McKesson allegedly began interfering with the Benzer Parties' business in several ways. For example, "[i]n February 2019, McKesson changed its [payment] policy so that, if one of the Benzer Parties or any of their affiliates failed to make any payment on time, it put the accounts of all of the Benzer Parties on hold." (Id. at ¶ 16). Furthermore, "[i]n August 2019, McKesson limited the total amount of outstanding purchases by the Benzer Parties to $12,000,000," where purchases had previously been unlimited. (Id. at ¶ 18).

McKesson also changed the date of invoice payment with only one week's notice, "began demanding repayment of loans, despite such loans not being due," and "refused to subordinate its position in the Benzer Parties' accounts receivable," preventing the Benzer Parties from accessing a $7.5 million line of credit. (Id. at ¶¶ 17, 23). Under these new terms, McKesson "began charging late fees" and applying "payments to [these] late fees, rather than to payment of amounts incurred for pharmaceutical supplies." (Id. at ¶¶ 20, 22).

The Benzer Parties claim that these changes had a "significant impact on [their] cash flow and operations." (Id. at ¶ 19). Namely,

> [t]he Benzer Parties had long-standing customer relationships, pursuant to which those customers relied on the Benzer Parties to fill new prescriptions and refill existing prescriptions. By limiting the amount of product that the Benzer Parties could order, the Benzer Parties were not able to meet their customers' prescription needs, thereby resulting in customers utilizing other pharmacies and ending their relationships with the Benzer Parties. The Benzer Parties were also unable to fill prescriptions for new customers as a result of McKesson limiting the amount of product the Benzer Parties could sell. This caused a significant loss in revenue to the Benzer Parties.

(Id.).

McKesson initiated the underlying suit on September 17, 2020, alleging various breach-of-contract claims. (Doc. # 1). On October 14, 2020, the Benzer Parties filed their answer and counterclaim alleging claims against McKesson for breach of contract (Count I), breach of the implied duty of good faith and fair dealing (Count II), violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III), accounting (Count IV), declaratory judgment (Count V), tortious interference with a business relationship (Count VI), and tortious interference with a business expectancy (Count VII). (Doc. # 17).

McKesson moved to dismiss Counts II, III, V, VI, and part of Count VII. (Doc. # 20). The Court granted the motion in part, dismissing Count II with prejudice, Counts III and

3

VI without prejudice, and VII without prejudice to the extent it was premised on the Benzer Parties' relationship with potential customers. (Doc. # 26). The Court denied the motion to dismiss Count V. (Id.).

The Benzer Parties filed an amended counterclaim on December 23, 2020, consisting of a breach of contract claim (Count I), a violation of FDUTPA claim (Count II), an accounting claim (Count III), a declaratory judgment claim (Count IV), a tortious interference with business a relationship claim (Count V), and a tortious interference with a business expectancy claim (Count VI). (Doc. # 32).

Now, McKesson moves to dismiss Count V of the amended counterclaim — the tortious interference with a business relationship claim. (Doc. # 35). The Benzer Parties have responded (Doc. # 36) and the Motion is ripe for review.

## II.  Legal Standard

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the counterclaim and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the counterclaim-plaintiff with all reasonable inferences from the allegations in the

4

counterclaim. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [counterclaim-plaintiff's] obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the [counterclaim], and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

**III. Analysis**

McKesson seeks dismissal of Count V, claiming that — despite the opportunity to amend — the Benzer Parties provide "almost no additional facts to support their claim for tortious interference." (Doc. # 35 at 3).

To state a cause of action for tortious interference with a business relationship under Florida law, a plaintiff must sufficiently plead these elements: "(1) the existence of

5

a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Duty Free Ams., Inc. v. Estée Lauder Cos., 797 F.3d 1248, 1279 (11th Cir. 2015) (citing Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla. 1994)).

The Court has held that the Benzer Parties "may allege interference with existing customers as such customers would be readily identifiable." (Doc. # 26 at 22) (citing BPI Sports, LLC v. Labdoor, Inc., No. 15-62212-CIV-BLOOM, 2016 WL 739652, at *3 (S.D. Fla. Feb. 25, 2016)). However, the Court previously dismissed the tortious interference claim because the Benzer Parties "failed to allege that they had any contractual agreements or understandings with these existing customers." (Id.) (citing ADT LLC v. Teamtronics, Inc., No. 14-cv-81589-Rosenberg/Hopkins, 2015 WL 12866274, at *4 (S.D. Fla. May 18, 2015).

In the amended counterclaim, the Benzer Parties not only allege "long-standing customer relationships," but specify that these customers "relied on the Benzer Parties to . . . refill existing prescriptions." (Doc. # 32 at ¶ 19). "A business relationship need not be evidenced by a contract,

6

but it generally requires an understanding between the parties that would have been completed had the defendant not interfered." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1154 (11th Cir. 2001) (citation omitted). Taking all reasonable inferences in favor of the Benzer Parties, the Court agrees that an existing prescription — that is, one that has been consistently filled by the Benzer Parties and is now merely waiting to be refilled — is an "understanding between the parties" that business will occur. Id.

The remaining elements are also sufficiently pled. Taking the Benzer Parties' allegations as true, but for McKesson's actions limiting pharmaceutical supplies, long-standing customers would have continued to fill existing prescriptions at Benzer pharmacies. (Doc. # 32 at ¶ 19). Such allegations sufficiently state a plausible claim for tortious interference. See Envtl. Sols. Assn. v. Pro. Lab'ys, Inc., No. 13-61051-CIV, 2013 WL 12043499, at *4 (S.D. Fla. Dec. 9, 2013) ("Pro-Lab additionally alleges that these customers would have completed additional purchases but for ESA's conduct in making false and disparaging statements. These allegations sufficiently state a plausible claim for tortious interference."); E-Z Pack Mfg., LLC v. RDK Truck Sales &

Serv., Inc., No. 8:10-cv-1870-WPD-AEP, 2011 WL 4343790, at *10 (M.D. Fla. Aug. 10, 2011) (holding that "it is plausible that [business] relationships may be identifiable as opposed to speculative" where the defendant alleged that it "enjoyed advantageous business relationships, including contractual agreements, with several customers throughout the Southeastern United States"). Accordingly, the Motion is denied to the extent Count V is based on tortious interference with customers refilling existing prescriptions.

However, the Court agrees with McKesson that the Benzer Parties have not plausibly alleged an understanding with customers, either new or long-standing, to fill new prescriptions. Instead, the Benzer Parties' hope that customers would fill new, future prescriptions at their pharmacies is "nothing more than pure speculation." Miracle 7, Inc. v. Halo Couture, LLC, No. 13-61643-CIV, 2014 WL 11696708, at *4 (S.D. Fla. Jan. 17, 2014). The Motion is therefore granted to the extent Count V is premised on new and existing customers filling new, future prescriptions with the Benzer Parties.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff and Counterclaim-Defendant McKesson Corporation's partial Motion to Dismiss the Amended Counterclaim (Doc. # 35) is **GRANTED IN PART** and **DENIED IN PART.**

(2) The Motion to Dismiss is **GRANTED** as to the portion of Count V based on new and existing customers filling new prescriptions at Benzer pharmacies. That portion of Count V is dismissed with prejudice.

(3) The Motion to Dismiss is **DENIED** as to the portion of Count V based on existing customers filling existing prescriptions.

(4) McKesson's answer to the amended counterclaim is due by **March 11, 2021.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of February, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE